UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JACK C. SNYDER, WAVA H. SNYDER,
and JACK-BRADLEY H. SNYDER,

                              Plaintiffs,

-against-                                                       07-CV-271

RONALD J. COOPER and JANE D. CRAVER,

                              Defendants.
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

### I.    INTRODUCTION

Plaintiffs commenced this diversity action *pro se* alleging damages arising from a real estate deal with Defendants. Defendants move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that the amount in controversy is less than $75,000.00 and, therefore, the Court lacks of subject matter jurisdiction over the action. Plaintiffs have opposed the motion.

### II.    STANDARD OF REVIEW

"It is a fundamental principle that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Owen Equipment & Erection Co. v. Kroger, 437

1

U.S. 365, 374 (1978). Title 28 U.S.C. § 1332 confers subject matter jurisdiction over actions between "citizens of a State and citizens or subjects of a foreign state" where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(2).

> The party invoking federal court jurisdiction "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." [Scherer v. Equitable Life Assur. Soc'y, U.S., 347 F.3d 394, 397 (2d Cir. 2003)](quoting Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (further citation omitted)). But, that burden is "hardly onerous ... [given the] rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Id. If a party opposes diversity jurisdiction, then that party "must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Id. (quoting [Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)](further citation omitted)).

Wrap-N-Pack, Inc. v. Eisenberg, 2007 WL 952069, at * 4 (E.D.N.Y. March 29, 2007).

"When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits." Gunst v. Seaga, 2007 WL 1032265, at *2 (S.D.N.Y. March 30, 2007)(citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" Id. (quoting Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)). If any of the grounds for subject matter jurisdiction are lacking, dismissal is mandatory. See United Food & Commercial Workers Union Local 919 v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994).

## III.  BACKGROUND

Plaintiffs own property in Clayton, New York near the St. Lawrence River.  Their property is in a row of "twenty-nine cottage lots" running east to west in what Plaintiffs refer to as the "Aubertine Tract subdivision."  Compl. ¶ 25.  The St. Lawrence River is located to the north of the Aubertine Tract subdivision, and to the south is a large undeveloped parcel of land owned by the Mason and Aubertine families referred to as "the Pasture."  See Compl. Ex. 1.  Running east to west along the northern portion of the Pasture is a private gravel road referred to as Rock Beach Road.  Id.  Rock Beach Road intersects Breezy Point Road, a town road, on its western end, and intersects State Route 12E on its south-eastern end.  Id.; Devendorf Decl., Ex. 1.[1]  Owners of the properties in the Aubertine Tract subdivision used Rock Beach Road for motor vehicle access to and from the public highways.  Heading west on Rock Beach Road from Plaintiffs' property, it is approximately 500 feet to Breezy Point Road. See Pltfs Mem. L. in Opp. ¶ 9.

Defendants obtained title to a 6.75 acre portion of the Pasture that abutted twenty (20) of the properties in the Aubertine Tract subdivision. Compl. Ex. 1.  The 6.75 acre parcel encompassed most, but not all of, Rock Beach Road behind the Aubertine Tract subdivision.  Id.  Defendants divided this strip of land and offered to the twenty adjoining Aubertine Tract subdivision owners small lots between their properties and Rock Beach Road.  See Compl. Ex. 1.  In the selling offer, Defendants stated that "[e]ach purchase would include ownership of the right-of-way, and any land north of the existing road that currently belongs to the Masons and Aubertines."  Id.  Defendants also represented that

---

[1] Rock Beach Road runs from Breezy Point Road east behind the Aubertine Tract subdivision and then turns 90° to the south, running southward along the eastern border of the Pasture to State Route 12E.

they would use the proceeds of the sales of these small lots to purchase the rest of the Pasture and would, in the future, lease the Pasture "for continued grazing." Id.

On September 21, 2005, Plaintiffs purchased from Defendants, for $10,000.00, a 200 x 50 foot lot adjacent to their property. A warranty deed conveyed the lot to Plaintiffs "[t]ogether with and subject to the rights of ingress and egress in common with others over the private right of way known as Rock Beach Road for access to and from the town highway known as Breezy Point Road." Compl. ¶ 8, Ex. 3.

After purchasing this lot, Plaintiffs learned that the Masons and Aubertines were offering for sale a 1-acre building lot at the westward end of Rock Beach Road near the intersection of Breezy Hill Road. Id. ¶ 10.[2] The 1-acre lot consisted of parcels on both the north and south sides of Rock Beach Road. Id. ¶ 10. On November 11, 2006, members of the Mason and Aubertine families erected "No Trespassing" signs on the portion of Rock Beach Road that intersected this 1-acre parcel "[t]hereby blocking [Plaintiffs'] ingress and egress from Rock Beach Road to and from Breezy Point Road." Id. ¶ 12. Plaintiffs contacted Defendants and, on November 29, 2006, Defendant Cooper wrote to Plaintiffs:

> We are sorry for any confusion in the wording of the deed for the lots that were purchased from Jane and me. As you are aware, when we made the deal we were selling you the lot opposite yours - 200' in depth - and your portion of the right-of-way in front of your existing lot. Somehow, the surveyor put the wording about the right-of-way to Breezy Point Rd. in the deeds. We never owned that right-or-way, never offered it to anyone, and could not transfer it if we wanted to.

Compl. Ex. 5.

The Masons and Aubertines refused Plaintiffs' offer to buy an easement over the

---

[2] This 1-acre lot was outside the 6.75 acre lot purchased by Defendants.

4

portion of Rock Beach Road that intersected the 1-acre lot, Compl. ¶ 15, and instead advised them to buy the 1-acre lot. The 1-acre lot is listed for sale at a price of $175,000.00. Compl. Ex. 6.

Plaintiffs contend that, in 1958, the Masons conveyed to the owners of each of the twenty-nine lots of the Aubertine Tract subdivision "a perpetual and unobstructed right of way thirty feet in width . . . westerly along the existing road and right of way along the rear of the twenty nine cottage lots on the Aubertine subdivision." Compl. ¶ 25; Ex. 13. Since the 30' right of way conveyed in 1958 ran with the land, id., Plaintiffs assert that in 2005 Defendants essentially sold them a right of way they already possessed. Compl. ¶ 25.

Plaintiffs commenced this action asserting claims that, when liberally construed, sound in breach of contract, fraudulent inducment, and unjust enrichment. See generally Compl; Pltfs. Mem L. in Opp. Plaintiffs contend that the loss of access from their property to Breezy Point Road has resulted in diminution in value of their property "changing its status from all-season to seasonal," and "den[ies] expeditious access to emergency vehicles." Compl. ¶ 58.[3] Plaintiffs seek damages in the amount $175,000 to "enable the Plaintiffs to purchase the right-of-way offered by the Masons and Aubertines," id. at ¶¶ 58 & 64, and seek an undetermined amount of punitive damages. Plaintiffs also contend that, based on their own comparison of the values of property sales in the Aubertine Tract subdivision with and without vehicle access at Breezy Point Road, the value of their property is diminished by $75,000.00. See id. at ¶ 12.

---

[3] Plaintiffs concede in their opposition papers that there is still an alternative route to and from the public roads, but argue that it entails heading east/southeast on Rock Beach Road to State Route 12E which requires them to "drive approximately 3,500 feet over a muddy, one-lane dirt path, traverse a hill and rock-cut, impossible to keep open during the winter[] snows and spring thaws." Mem L. in Opp., ¶ 10.

5

## IV.  DISCUSSION

The Complaint alleges claims sounding in breach of contract. See generally Compl. To the extent Plaintiffs assert claims sounding in fraudulent inducement and unjust enrichment, the claims are barred by the exclusive remedy of a breach of contract claim. See Levin v. Gallery 63 Antiques Corp., 2006 WL 2802008, at * 19 (S.D.N.Y. Sept. 26, 2006)("The causes of action for money had and received, promissory estoppel, unjust enrichment, and negligence are all quasi-contract claims and are therefore not viable, where, as here, it is undisputed that the parties entered into an express agreement that governs the dispute."); Conocophillips v. 261 East Merrick Road Corp., 428 F. Supp.2d 111, 127 (E.D.N.Y. 2006) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.")(citations omitted); Romano v. MTI/The Image Group, Inc., 2003 WL 22203735, at * 3, n. 5 ("[I]t is well settled under New York law that a cause of action for fraud cannot be sustained where the alleged fraud relates to a breach of contract.")(S.D.N.Y. Sept. 23, 2003);  see also Topps Company, Inc. v. Cadbury Stani S.A.I.C., 380 F. Supp.2d at 265 ("New York courts clearly distinguish between a 'promissory statement as to what will be done in the future,' which gives rise only to a breach of contract claim, and a false 'representation of present fact,' which gives rise to a separable claim of fraudulent inducement.")(quoting Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992) and citing Restatement (Second) of Contracts § 159, cmt. c. (1981)); 195 Lombardy Street, L.L.C. v. McCarthy, 2006 WL 3076563,  at * 4 (N.Y. Sup. Ct., Kings Cty, Jan. 4, 2006)(slip op.)("[P]laintiff's allegation that defendant fraudulently induced it to

enter into the contract while never intending to sell the premises is simply a breach of contract claim.").

"Damages for a breach of contract are normally limited to the amount necessary to put the plaintiff in the same economic position plaintiff would have occupied had the breaching party performed the contract." Topps Company, Inc. v. Cadbury Stani S.A.I.C., 380 F. Supp.2d 250, 261 (S.D.N.Y. 2005); id. at 269 ("Elementary principles of contract law dictate that damages for a breach of contract should put the non-breaching party in the position it would have occupied but for the breach; the injured party should not recover more from the breach than the party would have gained had the contract been fully performed."). Where a case is instituted to resolve the parties' rights and title to real property, the amount in controversy is generally determined by the value of the realty directly affected. Correspondent Services Corp. v. JVW Investment, Ltd., 2004 WL 2181087, at * 8 (S.D.N.Y. Sept. 29, 2004). Here, to the extent that Plaintiffs contend that Defendants sold them a piece of property that they already owned, or that Defendants breached the contract of sale because they did not convey title and the right of way to Breezy Point Road as purportedly agreed to, the amount in controversy is $10,000.00 - the value of the realty conveyed.

To the extent that Plaintiffs complain that they have been damaged by diminution in value of their property by the loss of access to and from Breezy Point Road, that damage, if it exists, has been caused by the actions of the Mason and Aubertine families. Members of the Mason and Aubertine families are not parties to this action, so the Court will not consider any damages they may have caused in determining the amount in controversy. While the Plaintiffs assert that they desire to add members of the Mason and Aubertine

families as defendants, see Pltf. Mem. L. p. 12, amendment would be futile from a jurisdictional perspective because, according to Plaintiffs, four of these individuals reside in New York.  Id.   Adding them as defendants would destroy complete diversity and, *a fortiori*, require dismissal of the action on an alterative basis.

While punitive damages may be factored into the calculus of determining the amount in controversy, McCarty v. Derivium Capital, LLC, 2006 WL 413258, at *1 (D. Conn. Feb. 21, 2006), such damages are awarded in breach of contract actions only in the most extreme cases. See Rocanova v. Equitable Life Assurance Soc'y of the United States, 83 N.Y.2d 603, 613 (1994)("Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights."); Carvel Corp. v. Noonan, 350 F.3d 6, 24 (2d Cir. 2003) ("Of course, it is hornbook law that punitive damages are unavailable in ordinary contract actions.").  Under New York law

> where the breach of contract also involves a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable if the conduct was aimed at the public generally. . . .  Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.

Rocanova v. Equitable Life Assurance Soc'y of the United States, 83 N.Y.2d 603, 613 (1994)(quotation marks and citations omitted); see also Schonfeld v. Hilliard, 218 F.3d 164, 183-84 (2d Cir.2000) ("The Court of Appeals has since suggested that these requirements [including a public harm] are applicable whenever an action 'has its genesis in the contractual relationship between the parties.'")(quoting New York Univ. v.

8

Continental Ins. Co., 87 N.Y.2d 308, 316 (1995)).

While Plaintiffs allegations concern Defendants' conduct toward twenty (20) of the Aubertine Tract subdivision owners, the conduct does not constitute conduct aimed at the public generally. See Topps Company, Inc., 380 F. Supp.2d at 262-63 ("For the purposes of identifying a public wrong, New York law distinguishes between 'a gross and wanton fraud upon the public' and 'an isolated transaction incident to an otherwise legitimate business.' The latter does not constitute conduct aimed at the public generally. Even viewing the evidence in the light most favorable to Topps, no interpretation of the facts underlying the claim could support labeling Stani's conduct a gross and wanton fraud upon the public. Topps alleges the quintessential private wrong and, as a matter of law, its breach of contract claim does not warrant punitive damages.")(quoting Walker v. Sheldon, 10 N.Y.2d 401, 405 (1961)); W.S.A., Inc. v. ACA Corp., 1998 WL 635536, at *1-2 (S.D.N.Y. Sept. 15, 1998) (Haight, J.) ("[I]n the wake of Rocanova, the lower New York appellate courts have consistently applied the 'public wrong' rule to tort and contract cases alike . . . Because ACA does not allege a pattern of conduct harmful to the general public, Harmon's motion for summary judgment on ACA's punitive damages claim is granted.").

Further, inasmuch as Plaintiffs' allegations reveal: (1) the decision to close Rock Beach Road on its western end was not made by Defendants, (2) that decision was made after the contract in issue was consummated, and (3) Plaintiffs still have vehicle access to the public roads albeit by a longer, more difficult route on Rock Beach Road, see fn. 3, *supra*, no reasonable fact finder could conclude that Defendants' conduct demonstrated the type of wanton dishonesty necessary to sustain a claim for punitive damages

surrounding the contract in issue. See Schonfeld, 218 F.3d at 183-84 (2d Cir. 2000)("We need not decide whether the 'public harm' requirement set forth in Rocanova applies to claims for fraud[ulent inducement] . . . because we agree with the district court that the defendants' alleged conduct was not 'sufficiently egregious' or 'willful' to warrant the imposition of exemplary damages. . . .")(quoting New York Univ., 87 N.Y.2d at 316).

## V.  CONCLUSION

For the reasons discussed above, the Court finds that the instant matter does not involve a controversy of an amount in excess of $75,000.00.  Therefore, Defendants' motion to dismiss the action for want of subject matter jurisdiction is **GRANTED**, and the action is **DISMISSED WITHOUT PREJUDICE TO REFILING**.

**IT IS SO ORDERED**

DATED: June 29, 2007

_____
Thomas J. McAvoy
Senior, U.S. District Judge